UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HOLLY F.,

                Plaintiff,

v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,

                Defendant.

CASE NO. C18-5036-MAT

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL

Plaintiff proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied Plaintiff's application for Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda, this matter is AFFIRMED.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1990.[1] She graduated from high school and has associate degrees in communications and library studies. She has no work history since her high school graduation in 2008. (AR 251, 62, 262.)

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

| | |
|---|---|
| 1 | Plaintiff protectively filed her SSI application on October 21, 2014, alleging disability |
| 2 | beginning October 1, 2012. (AR 251-256.) The claim was denied initially and on reconsideration. |
| 3 | (AR 112-123, 125-137.) On September 19, 2017, ALJ Allen G. Erickson held a hearing, taking |
| 4 | testimony from Plaintiff, her significant other, Lily Jomsdottir, and a vocational expert (VE). (AR |
| 5 | 55-111.) On October 4, 2017, ALJ Erickson issued a decision finding Plaintiff not disabled. (AR |
| 6 | 39-49.) |
| 7 | Plaintiff timely appealed, and the Appeals Council denied review (AR 1-3), making the |
| 8 | ALJ's decision the final decision of the Commissioner. Plaintiff timely filed an appeal to this |
| 9 | Court. |
| 10 | **JURISDICTION** |
| 11 | The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g). |
| 12 | **DISCUSSION** |
| 13 | The Commissioner follows a five-step sequential evaluation process for determining |
| 14 | whether a claimant is disabled. *See* 20 C.F.R. § 416.920 (2000). At step one, it must be determined |
| 15 | whether the claimant is gainfully employed. The ALJ found Plaintiff had not engaged in |
| 16 | substantial gainful activity since the October 21, 2014 application date. (AR 41.) At step two, it |
| 17 | must be determined whether a claimant suffers from a severe impairment. The ALJ found severe |
| 18 | fibromyalgia, post-traumatic stress disorder (PTSD) and major depressive disorder. (AR 41.) Step |
| 19 | three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found |
| 20 | Plaintiff's impairments did not meet or equal the criteria of a listed impairment. (AR 43-44.) |
| 21 | If a claimant's impairments do not meet or equal a listing, the Commissioner must assess |
| 22 | residual functional capacity (RFC) and determine at step four whether the claimant has |
| 23 | demonstrated an inability to perform past relevant work. The ALJ found Plaintiff able to lift and/or |

carry up to 10 pounds occasionally and less than 10 pounds frequently, to stand and/or walk up to two hours in an eight-hour workday, and to sit about six hours in an eight-hour workday. Plaintiff cannot climb ladders, ropes, or scaffolds, and can occasionally climb ramps and stairs, as well as occasionally perform all other postural activities. Plaintiff can occasionally operate foot controls bilaterally, and can tolerate occasional exposure to vibration and temperature and humidity extremes. Plaintiff can understand, remember, and apply short, simple instructions and perform routine, predictable tasks, in an environment that is not a fast-paced, production type environment. Plaintiff can make simple decisions, be exposed to occasional workplace changes, and can occasionally interact with the general public and co-workers. (AR 44.) Plaintiff has no past relevant work. (AR 48.)

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the VE, the ALJ found Plaintiff capable of performing other jobs, such as work as a final assembler, document preparer and semi-conductor touch up screener. (AR 49.)

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v.*

*Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues that the ALJ erred in the evaluation of the medical evidence, in the assessment of her testimony regarding her limitations, and in evaluating the lay testimony of Ms. Jomsdottir, and that these errors affected the RFC and step five findings. She requests that the Court remand for an award of benefits. (Dkt. 13 at 1-2.) The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed—but argues that if error is found, the matter should be remanded for further proceedings. (Dkt. 17.)

## Medical Evidence

Plaintiff avers error in the consideration of evidence from her therapist, Mackenzie Guddat, M.S., LMHC, and non-examining State agency psychologist Paula J. Bickham, Ph.D.

The regulations applicable to Plaintiff's SSI claim distinguish between "acceptable medical sources" and "other sources." Acceptable medical sources include, for example, licensed physicians and psychologists, while other non-specified medical providers, including therapists, are considered "other sources." 20 C.F.R. §§ 416.902, 416.913, and Social Security Ruling (SSR) 06-03p (rescinded effective March 27, 2017).[2] In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). An ALJ must provide clear and convincing reasons for rejecting the opinion of a

---

[2] New regulations, applicable to claims filed after March 27, 2017 and thus inapplicable here, include advanced practice registered nurses, audiologists, and physician assistants as "acceptable medical sources," and recognize other licensed heath care workers as "medical sources" and other sources of evidence as "nonmedical sources." 20 C.F.R. § 416.902(a), (d), (e).

ORDER
PAGE - 4

physician where it is not contradicted by another physician, or specific and legitimate reasons, supported by substantial evidence, for rejecting a physician's contradicted opinion. *Id*. at 830-31. The ALJ may assign less weight to the opinions of other sources, *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996), and may discount their opinions by providing reasons germane to the source, *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

A.  Mackenzie Guddat, M.S.

Ms. Guddat, one of Plaintiff's treating therapists at Greater Lakes Mental Healthcare, completed a medical source questionnaire on June 8, 2017. She rated Plaintiff's impairments extreme or marked in every category, finding that Plaintiff's abilities with respect to simple instructions or decisions were markedly impaired, while her abilities with respect to complex instructions or decisions were extremely impaired. (AR 824.) Similarly, Ms. Guddat responded that Plaintiff's ability to interact with the public and with co-workers were markedly impaired, while Plaintiff's ability to interact with supervisors and to respond to work situations and changes were extremely impaired. (AR 825.) In her short narrative explanations, Ms. Guddat stated that Plaintiff's scores on mental health questionnaires led to diagnoses of major depressive disorder and PTSD, which "significantly impacts," respectively, Plaintiff's attention, memory and concentration, and her ability to interact with supervisors, co-workers and the public. (AR 824-25.) Ms. Guddat also noted that Plaintiff's energy level, chronic fatigue, hypervigilance, anxiety and marked fear of men due to trauma would affect her abilities in a work environment. (AR 825.) As support for her conclusions, Ms. Guddat answered, "clinical observation and the aforementioned assessments and psychometrics." (*Id*.)

The ALJ gave little weight to Ms. Guddat's statement. (AR 47.) First, the ALJ found that the statement was inconsistent with the longitudinal treatment record and Ms. Guddat's treatment

notes, finding that the treatment notes frequently document normal findings regarding thought processes, intact associations, appropriate affect, fair insight and judgment, memory, and good orientation. (AR 47.) In particular, the ALJ found that the treatment note closest in time to Ms. Guddat's statement indicated that on June 1, 2017, Plaintiff endorsed anxiety, but her appearance, speech and thought process were normal, and Plaintiff reported that she was doing much better with depression. (*Id.*, citing AR 710.) Second, the ALJ observed that Ms. Guddat lacked the professional training and experience of a licensed psychologist, which might have bolstered her assessment.

Plaintiff argues that the ALJ's finding of inconsistencies was based upon an improperly selective view of the evidence, and that the longitudinal record supports Ms. Guddat's conclusions—particularly with respect to Plaintiff's fear of men. (Dkt. 13 at 5-6.) Plaintiff also argues that the ALJ's rationale with respect to Ms. Guddat's training was legally erroneous. (*Id.*)

The ALJ gave germane reasons, supported by substantial evidence, for discrediting Ms. Guddat's statement. Ms. Guddat opined that Plaintiff faced "marked" or "extreme" limitations in each and every category on the questionnaire, including Plaintiff's ability to carry out simple instructions or to remember simple instructions. (AR 824-25.) As the ALJ found, these restrictions conflict with both Ms. Guddat's own treatment notes and with the longitudinal record as a whole. The treatment notes of Ms. Guddat and Plaintiff's prior treating therapists at the same clinic generally show normal mental status examinations, with normal appearance/speech and thought process. (*e.g.* AR 709, 712, 715, 718, 721, 723, 726, 729, 732, 735, 726, 729.) Plaintiff was described, just two weeks before Ms. Guddat's statement, as "Alert and oriented. Affect responsive, friendly, good eye contact. Speech productive, normal rate/rhythm. . . . Memory and concentration intact." (AR 688.) Furthermore, the record for the visit one week before Ms.

Guddat's statement reflects that Plaintiff is "doing better with depression recently." (AR 710.) Indeed, Plaintiff's treatment records indicate a trend of improvement throughout her treatment at the Greater Lakes clinic. (*See* AR 712 ("overall improvement in symptoms of PTSD and depression" and "sleeping a lot better"); AR 726 ("increase in healthy interpersonal relationship communication . . . which has led to a decrease in feelings of depression and an increase in medication adherence"); AR 735 (success in three treatment goals, including social engagement); AR 778 (significant progress in reducing fear of men).) Significantly, Ms. Guddat's statement relies in part upon Plaintiff's score of 19 out of 27 on the Patient Health Questionnaire for depression (equivalent to moderately severe depression); however, the treatment notes show that Plaintiff re-took that test on March 10, 2017 and improved by four points to 14 out of 27. That score represents "a drop in depression symptoms to the low end of moderate depression" and significant progress toward Plaintiff's goal of a score of 10. (AR 824, 739, 707.)

In addition, the dire outlook of Ms. Guddat's statement is also in conflict with the record as a whole. A February 13, 2015 consultative examination by M. Aileen Mansuetto, M.A. found that Plaintiff's concentration, memory and persistence were within normal limits, as evidenced by her performance of objective tests—contrasting with Ms. Guddat's findings of "marked" impairment in those areas. (AR 608, 824.) Ms. Mansuetto diagnosed, *inter alia*, PTSD and major depressive disorder, but concluded that Plaintiff's prognosis, with therapy, was "good." (AR 609.) As discussed above, Plaintiff's Greater Lakes treatment records show improvement in several areas, and although mental health is subject to fluctuations, Plaintiff's recent records indicate that her medication and therapy sessions have been helpful. (AR 688, 710.) There is no indication of any recurrence of Plaintiff's major self-harm episode that led to her September 25, 2013 stay in a crisis stabilization unit. (AR 406.) Indeed, Plaintiff testified that, although she still suffers from

what she considers disabling mental illness, her move to Washington State in July, 2016 gave her "some hope" and she feels "safer." (AR 75.) The ALJ appropriately found that longitudinal record does not support the extreme limitations suggested by Ms. Guddat.

Plaintiff argues that, rather than reviewing the longitudinal record, the ALJ instead engaged in "cherry-picking" only evidence supporting his conclusion. (Dkt. 13 at 5-6.) But Plaintiff relies primarily upon evidence preceding Plaintiff's relocation to Washington or reciting history from that earlier period, when her mental health appears to have been worse. (*Id.*, citing AR 359, 367, 690, 702-03.) Plaintiff also notes that both the consultative examination and Plaintiff's Great Lakes records refer to a fear of men (AR 606, 702-03); however, the consultative examiner believed that Plaintiff's prognosis, with therapy, was good, and Plaintiff's recent treatment records show some progress on that issue. (AR 609, 778, 783.) In short, it cannot be said that the ALJ's analysis—which cited extensively to the medical record—was limited or selective. At most, Plaintiff presents an alternative view of the evidence. When evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). Where there is more than one rational interpretation of evidence, the ALJ's conclusion must be upheld. *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ properly disregarded Ms. Guddat's statement. It conflicts with her own treatment records, and is not consistent with the longitudinal record as a whole. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir.2005) (rejecting physician's opinion due to discrepancy or contradiction between opinion and medical records is "a permissible determination within the ALJ's province."); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (incongruity between doctor's questionnaire responses and her medical records supports rejection of her opinions); *Rollins v.*

*Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) ("extreme" limitations not supported by findings made by any other doctor may be rejected).[3]

B.     Dr. Paula Bickham

State Agency psychologist Paula Bickham, Ph.D. opined that Plaintiff had "moderate" impairments in her activities of daily living and social functioning. (AR 130.) She reported that Plaintiff had no memory, concentration or persistence limitations. (AR 134.) With respect to Plaintiff's social interactions, Dr. Bickham opined that Plaintiff's abilities to interact with the general public and to ask simple questions or request assistance were not significantly limited, but Plaintiff was moderately limited in her ability to accept instructions from supervisors and to get along with coworkers. (AR 134-35.) In her narrative explanation, Dr. Bickham stated that Plaintiff "can manage routine interactions with supervisors and co-workers in a non-adversarial environment and once work is assigned, work should be able to be performed primarily without working in coordination with others. [Plaintiff] should not be required to have interaction with the public." (AR 135.) Dr. Bickham concluded that Plaintiff showed severe mental and emotional impairments, but "it appears [Plaintiff] retains the mental/emotional capacity to carry out familiar, repetitive work-like tasks within the limitations identified above and within any physical limitations that might be found." (*Id.*)

The ALJ gave only limited weight to Dr. Bickham's opinion, finding that greater restrictions were warranted based on longitudinal records and medical evidence that the doctor did

---

[3] Plaintiff also argues that the ALJ improperly rejected Ms. Guddat's opinion simply because she does not qualify as acceptable medical source. (Dkt. 13 at 6.) While the ALJ observed that Ms. Guddat lacked the professional training and experience of a licensed psychologist, it is not clear that this was intended as a basis for rejecting her opinions, as opposed to noting that they were not entitled to the same deference as those of an acceptable medical source. (AR 47.) Because (as discussed above) the ALJ identified additional legally sufficient reasons for disregarding Ms. Guddant's opinions, error, if any, would be harmless. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

ORDER
PAGE - 9

not have the opportunity to review. (AR 46.) The ALJ found that Dr. Bickham "did not adequately consider the claimant's subjective complaints . . . as well as her cognitive and social functioning." (*Id.*)

Plaintiff argues that the ALJ erred in evaluating Dr. Bickham's opinion. Specifically, Plaintiff argues error in the ALJ's failure to address Dr. Bickham's comment that Plaintiff's work should be capable of performance "primarily without working in coordination with others" and that she "should not be required to have interaction with the public." (Dkt. 13 at 7, citing AR 135.)

The ALJ did not err. Although Dr. Bickham found Plaintiff had no memory or concentration limitations, the RFC limits Plaintiff to jobs involving simple instructions and simple decision-making. (AR 44, 134.) Consistent with Dr. Bickham's opinion, the RFC limited Plaintiff to routine, predictable tasks. (AR 44, 135.) It also excludes a fast-past production environment, and limits interactions with co-workers to "occasional." (AR 44.) While using different wording, these restrictions are not materially different from Dr. Bickham's specification of a "non-adversarial" environment and work performed "primarily without working in coordination with others." (AR 135) An ALJ does not err by assessing RFC limitations consistent with, but not identical to, limitations assessed by a doctor. *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010).

The only point of departure between the RFC and Dr. Bickham's opinion is that while the RFC permits "occasional" interaction with the general public, Dr. Bickham's opinion (notwithstanding an earlier finding that Plaintiff's ability to interact with the general public was not significantly limited) provides that Plaintiff should not be "required" to have such interaction. (AR 44, 135.) Even if this were a material difference and could be said to be error, any error would be harmless. As the Commissioner observed, the jobs identified by the VE as consistent with the

RFC—final assembler, document preparer and touch-up screener—do not require interaction with the general public. Information for all three jobs from the *Dictionary of Occupational Titles* (DOT) indicates that requirements for talking and hearing are "not present," and that the "people" component of them, limited to taking instructions/helping, is "not significant." DOT 713.687-018, *available at* 1991 WL 679271 (final assembler); DOT 249.587-018, *available at* 1991 WL 672349 (document preparer), DOT 726.684-110, *available at* 1991 WL 679616 (touch-up screener). To the extent that failure to incorporate further limitations upon Plaintiff's interaction with the public could be deemed error, it was harmless. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (ALJ's error may be deemed harmless where it is "'inconsequential to the ultimate nondisability determination.'") (internal citations omitted).

## Symptom Testimony

Absent evidence of malingering, an ALJ must provide specific, clear, and convincing reasons to reject a claimant's testimony.[4] *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834. The ALJ may consider a claimant's "reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ here found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms not fully supported. Contrary to Plaintiff's contention, the ALJ

---

[4] While the Social Security Administration eliminated the term "credibility" from its sub-regulatory policy addressing symptom evaluation, *see* SSR 16-3p, case law containing that term remains relevant.

ORDER
PAGE - 11

provided several specific, clear, and convincing reasons in support of that conclusion.

A.  Treatment Gap

In assessing symptom testimony, an ALJ properly considers evidence associated with treatment, 20 C.F.R. § 416.929(c)(3), SSR 16-3p, including unexplained or inadequately explained failure to seek or follow through with treatment, *Tommasetti*, 533 F.3d at 1039. *See also Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005) ("The ALJ is permitted to consider lack of treatment in his credibility determination."). The ALJ must consider reasons for a claimant's failure to seek or follow through with treatment. SSR 16-3p.

The ALJ discredited Plaintiff's testimony regarding her symptoms, in part, because there was a substantial gap in her treatment between March, 2015 and October, 2016. (AR 46.) While acknowledging that Plaintiff's July, 2016 move from West Virginia to Washington State could account for a small portion of this gap, the ALJ noted that there was no explanation for the 19-month period between March, 2015 and July, 2016. (*Id.*) The ALJ found that Plaintiff's failure to seek out or to receive medical care during this period is "inconsistent with her allegations of continuing disability during that time period." (*Id.*)

Plaintiff's last treatment record for her physical impairments is a visit for fibromyalgia and back pain, dated March 31, 2015. (AR 617-18.) The record contains a recommendation of physical therapy three times per week for four weeks, and follow-up in two to three weeks. (*Id.*) The record contains no evidence that the physical therapy recommendation was followed, and shows no further visits to the examining physician. Plaintiff's gap in mental health treatment was even lengthier; her last therapy visit before resuming treatment was on November 19, 2014. (AR 584.) At that time, Plaintiff's mood was described as "pretty good-has not been too depressed." (*Id.*) The note indicates that Plaintiff was "scheduled to return in 4 weeks." (*Id.*) But it was nearly

ORDER
PAGE - 12

two years before Plaintiff re-started therapy, even though she testified at the hearing that "I need therapy. I can't live without therapy." (AR 798, 77.) Plaintiff's failure to pursue treatment of her severe impairments for more than a year is a clear and convincing reason to discredit her testimony regarding the severity of her symptoms. *Molina*, 674 F.3d at 1113 ("the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment"); SSR 16-3p, 2017 WL 5180304 at *9. *See also Roberts v. Berryhill*, 734 F.Appx. 489, 491 (one-year gap with no ongoing pain treatment for fibromyalgia supported ALJ's credibility determination).

Plaintiff does not dispute the existence of the gap in treatment, but instead argues that it was the ALJ's duty to develop the record to explain the gap or to inquire whether additional records exist. (Dkt. 13 at 10). However, the claimant bears the burden of producing evidence to support her disability and bears an obligation to "furnish medical and other evidence[.]" 20 C.F.R. § 416.912 (a), (c); *see generally Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir.1999). Moreover, "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Neither circumstance exists here.

B.  Inconsistency with Medical Evidence

The ALJ also found that Plaintiff's subjective testimony regarding her symptoms was not consistent with the medical evidence. (AR 45-46.) The ALJ found that, despite Plaintiff's subjective complaints, physical examinations throughout the disability period showed good range of motion in all extremities with no abnormal deficits. (AR 45, citing AR 591-92, 519.) In particular, the ALJ found that on December 2, 2014, Plaintiff described weakness in her legs and used a cane, even though none had been prescribed. (AR 45.) However, examination at that time,

ORDER
PAGE - 13

while revealing paraspinal tenderness, also showed full range of motion, normal reflexes and negative straight leg raise; the examining physician recommended physical therapy to build strength so that a cane would not be needed. (AR 45, citing AR 588-89.) The ALJ found that subsequent examinations again noted all extremities were intact with full range of motion, no motor or sensory deficits and normal reflexes. (AR 45, citing 615, 617.) More recent examinations made no findings, until Plaintiff's rheumatology examination on August 22, 2017, which found 18 out of 18 positive tender points and diagnosed fibromyalgia. (AR 45, citing AR 819-22.)

Plaintiff argues that (1) the ALJ improperly contravened SSR 16-3p and *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) by simply reciting the medical evidence in support of his RFC determination instead of providing specific, clear and convincing reasons for discrediting her testimony, and (2) the ALJ improperly required objective evidence to support the symptoms of her fibromyalgia, when Ninth Circuit authority recognizes that the condition is diagnosed solely upon the patient's pain and symptoms (citing *Revels v. Berryhill*, 874 F.3d 648 (9th Cir. 2017)).

The Court rejects Plaintiff's first argument. The ALJ did not merely recite medical evidence to support his RFC determination; instead, he cited medical examination results that he found directly contradicted Plaintiff's specific complaints of leg weakness and pain—and, in particular, Plaintiff's claim that she required a cane or other assistive device and could not sit or stand for long periods of time. (AR 45.) The ALJ provided the specificity required by *Brown-Hunter*. 806 F.3d at 494.

Plaintiff's second argument also fails to establish error. Fibromyalgia "is diagnosed entirely on the basis of patients' reports of pain and other symptoms," and "there are no laboratory tests to confirm the diagnosis." *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004). Instead, the disease is diagnosed using symptom-based criteria. SSR 12-2p, 2012 WL 3104869 at *2. In

Plaintiff's case, those symptoms included 18 of the recognized 18 tender points and more than six months of symptoms, including chronic fatigue, tender points, sleep disturbance, irritable bowel symptoms and headaches. (AR 819.) The Ninth Circuit has cautioned that "those suffering from [fibromyalgia] have 'muscle strength, sensory functions, and reflexes [that] are normal.'" *Revels*, 874 F.3d at 656 (internal citations omitted). The court noted that "normal muscle strength, tone, and stability, as well as normal range of motion" are "perfectly consistent with debilitating fibromyalgia." 874 F.3d at 666.

Plaintiff misapprehends the distinction between a diagnosis of fibromyalgia at step two (which the ALJ accepted (AR 41)) and a step four finding that the condition was impairing. A step two severity finding does not necessarily imply an impairment will be found to result in functional limitations sufficiently significant to affect the ability of a claimant to perform work activities. *See, e.g., Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017) (finding claimant misunderstood purpose of step two in arguing the finding of several new severe impairments on remand necessitated alteration of the RFC). Case law is equally clear that medical evidence remains relevant in evaluating the symptom testimony of claimants diagnosed with fibromyalgia. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins*, 261 F.3d at 855. In *Rollins*, the court found that the ALJ provided sufficient specific reasons for not fully crediting a claimant's fibromyalgia-related pain testimony, where her doctor did not limit her activities and she engaged in daily household activities. *See also Roberts* 734 Fed.Appx. at 490-91 (affirming ALJ's finding that fibromyalgia claimant's testimony about the severity of her symptoms was not credible due to a gap in treatment).

Here, the ALJ found that Plaintiff's testimony regarding her inability to walk unassisted conflicted not only with medical evidence of continued strength in her limbs, but also with her doctor's recommendation of physical therapy. (AR 45, citing AR 588.) It is noteworthy that multiple treatment notes recommend physical therapy and/or exercise, thus indicating that Plaintiff's treating physicians considered her capable of greater activity than she testified she could tolerate. (AR 588, 592, 595, 618, 819.) The Court cannot conclude that the ALJ erred in determining that Plaintiff's symptom testimony conflicted, at least in part, with the medical evidence.

"[T]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Here, the existence of a lengthy gap in treatment, together with a conflict between the medical record and Plaintiff's testimony regarding her limitations provide specific, clear and convincing reasons, supported by substantial evidence, for the ALJ's assessment of Plaintiff's symptom testimony.

<u>Lay Testimony</u>

Lay witness testimony as to a claimant's symptoms or how an impairment affects her ability to work is competent evidence and cannot be disregarded without comment. *Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ can reject the testimony of lay witnesses only upon giving germane reasons. *Smolen v. Chater*, 80 F.3d 1273, 1288-89 (9th Cir. 1996).

Plaintiff's significant other, Lily Jomsdottir, testified that Plaintiff was unable to sit for long and had difficulty standing and walking. (AR 98.) She also testified that Plaintiff generally does not leave the house and needs assistance with her balance while showering. (AR 101.)

The ALJ considered Ms. Jomsdottir's testimony, but discounted it, in part, because it was

inconsistent with the medical evidence. (AR 47.) This is a germane reason for rejecting lay testimony. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). In addition, An ALJ may also find the reasons for discounting a claimant's testimony equally applicable to the testimony of a lay witness. *Molina*, 674 F.3d at 1122. *See also Valentine v. Comm'r SSA*, 574 F.3d 685, 694 (9th Cir. 2009) (because "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness's] testimony"). The Court finds that the ALJ did not err in rejecting the testimony of Ms. Jomsdottir.[5]

### RFC and Step Five

Plaintiff avers error in the RFC and step five findings due to the ALJ's failure to include all of the limitations identified by Ms. Guddat, Dr. Bickham, Plaintiff, and Ms. Jomsdottir. However, in light of the Court's determination that there was no reversible error in the ALJ's evaluation of that evidence, there is likewise no error at steps four and five. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

### **CONCLUSION**

For the reasons set forth above, this matter is AFFIRMED.

DATED this <u>6th</u> day of December, 2018.

Mary Alice Theiler
United States Magistrate Judge

---

[5] Plaintiff contests two additional reasons given by the ALJ for discounting Ms. Jomsdottir's testimony—that Ms. Jomsdottir was not medically trained and the closeness of her relationship to Plaintiff. Any error in relying upon these reasons was harmless, in light of the germane reasons discussed above. *Carmickle*, 533 F.3d at 1162.

ORDER
PAGE - 17